UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD VACCARELLA,

                Plaintiff,        07-CV-0496-S

     V.                            **DECISION**
                                             **And ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

## **INTRODUCTION**

Plaintiff Richard Vaccarella ("Plaintiff") brings this action pursuant to Title II of the Social Security Act, §§ 216(i), 223 (codified at 42 U.S.C. § 401 et. seq.), claiming that the Commissioner of Social Security improperly denied his application for disability benefits. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard his case was erroneous because it was not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on grounds that the ALJ's decision was supported by substantial evidence and made in accordance with applicable law. For the reasons set forth below, I hereby deny the Commissioner's motion for judgment on the pleadings, and remand this claim to the

-Page 1-

Commissioner for further proceedings consistent with this decision.

### BACKGROUND

Plaintiff Richard Vaccarella's disability claim originates from injuries received as the result of a work accident in 1992. His left arm was crushed while operating a machine at his job in a floor molding factory. (Transcript of Administrative Proceedings at pages 19, 95, 99, 178, 180) (hereinafter "T."). The plaintiff thereafter underwent 16 surgeries on his left arm involving numerous bone and arterial grafts from his hips and right leg as well as transplants of skin and tissue. (T. 16, 37, 182-84, 206). He returned to work with the same company in a modified capacity in 1995 as a quality control specialist. (T. 96, 144-150). In this capacity, plaintiff was required to handle, grab or grasp big and small objects for measuring and weighing purposes, and was on his feet the entire day. (T. 97, 178).

On June 15, 1995, plaintiff resigned from his employment. Prior to resigning, on May 10, 1995, plaintiff initially applied for and was granted a period of disability and disability insurance benefits. While receiving disability benefits, plaintiff suffered deterioration of his condition resulting in

pain in his left hand. (T. 96, 144-50, 181-82). On March 30, 1998, Dr. Owen J. Moy, his treating hand surgeon, reported that x-rays of plaintiff's arm showed osteopenic changes in all bones, irregularity of the articular surfaces of the metacarpal phalangeal joint, and he noted plaintiff was "having increased symptoms in his hand." (T. 147). In October 1998, Dr. Moy determined that in light of plaintiff's ankylosed wrist, limited range of motion, loss of grip strength and both oppositional and appositional pinch strength, plaintiff had suffered an 80% loss of use of his left hand. (T. 149).

Plaintiff received disability benefits until April 2002, when the Social Security Administration determined that plaintiff was no longer entitled to benefits because his medical condition had improved. (T. 14, 37). Plaintiff filed a request for benefit reinstatement on March 6, 2002, which was denied on May 14, 2002. (T. 14, 36-37, 39-53). Plaintiff did not pursue further appeals of that denial.

On April 30, 2003, when plaintiff was twenty-eight years old, he protectively filed his current application for a period of disability and disability insurance benefits for a claimed disability beginning on June 1, 1999 due to dysfunction of his left arm and hip pain. (T. 38, 68-70). Following denial of his

application, plaintiff requested a hearing before an ALJ, and a hearing was held on October 1, 2004. (T. 54-58, 175; see T. 175-212). Plaintiff was represented by counsel at the hearing, and a vocational expert was also present and testified. (T. 177).

At the hearing, plaintiff alleged additional impairments including chronic right leg pain, as well as psychological impairments of depression and panic attacks. (T. 186-203). The record indicates that he had undergone treatment from February 2002 through the date of the hearing for psychological impairments resulting from the injury to his arm and the consequences of his surgeries. On February 27, 2002, plaintiff saw Dr. K. Rajendran, a psychiatrist who found that the plaintiff showed symptoms of anxiety, depression, inability to concentrate or cope with daily life, hearing voices argue in his head, inability to sleep, loss of weight, increased heart rate, diarrhea, and flashbacks of the accident. (T. 153-54). Dr. Rajendran diagnosed plaintiff as having post traumatic stress disorder ("PTSD"), major depression, recurrent, with psychosis with severe anxiety. Prognosis: Guarded. Id. This was confirmed by treating psychiatrists Dr. Meliton Tanhehco, a staff psychiatrist at Niagara Falls Memorial Medical Center, and Dr. Anjun Haque. Plaintiff was admitted to the hospital with

depression and thoughts of suicide, along with a history of mood disorders. His condition was diagnosed as schizophrenia paranoid disorder, and serious impairments in social or occupational functioning. (T. 131-41).

In a decision dated June 13, 2005, the ALJ found that the plaintiff had a severe impairment due to dysfunction of his left arm, PTSD, and major depressive disorder with psychotic features. (T. 16-23). The ALJ was not persuaded, however, that plaintiff suffered from severe schizophrenia paranoid disorder, nor from severe hip or leg pain but gave him the benefit of the doubt and found that plaintiff's anxiety disorder, difficulties with concentration, PTSD, major depressive disorder with psychotic features were secondary to plaintiff's marijuana use. (T. 17). As a result of these findings, the ALJ determined that plaintiff was not disabled. Plaintiff's appeal of the ALJ's decision to the Social Security Appeals Council was denied on July 2, 2007, and on July 25, 2007, plaintiff filed this action.

## DISCUSSION

I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were

supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

The Commissioner asserts that the ALJ's decision was reasonable and supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

II. The ALJ's decision to deny plaintiff's application for disability benefits under the Social Security Act was not supported by substantial evidence in the record

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2004). Additionally, an individual's physical or mental

impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1383(a)(3)(B). See also Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982). As required by the regulations promulgated by the Commissioner, the ALJ adhered to the Social Security Administration's five-step sequential analysis for evaluating disability claims. 20 C.F.R. § 404.1520. Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P. If the claimant does not have a listed impairment, the Commissioner inquires whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. If he is unable to perform his past work, the Commissioner determines whether there is other work which the claimant can perform.

Berry, 675 F.2d at 467.

The ALJ in this case found that: (i) the plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability; (ii) the plaintiff had severe impairments

due to dysfunction of the left arm, PTSD, and major depressive disorder, did not suffer from severe impairments due to right leg and hip pain, and suffered from an anxiety disorder that was induced by marijuana use; (iii) the plaintiff does not have an impairment or combination of impairments that meets or medically equals listed impairments set forth in Appendix P of the Social Security regulations; (iv) plaintiff retains the residual functional capacity to perform light work, and; (v) the plaintiff can perform, consistent with his medically determinable impairments, other jobs existing in the national economy such as school bus monitor, car wash attendant, or a telephone marketer. The ALJ thus concluded the plaintiff was not disabled within the meaning of the Social Security Act. I find, however, that the ALJ's conclusion that the plaintiff is not disabled under the Social Security Act is not supported by substantial evidence in the record as a whole.

> **A. The ALJ erred by giving controlling weight to the opinion of non-examining medical consultant Dr. Gitlow over the opinions of plaintiff's treating physicians**

In analyzing the plaintiff's claim, the ALJ requested a consultative review of the medical record by Dr. Stuart Gitlow, a psychiatric and substance abuse expert, who did not physically examine the plaintiff, and was not present at the hearing to

evaluate the plaintiff's testimony. The ALJ erred by basing his decision to deny plaintiff's application for benefits on Dr. Gitlow's report, and giving it controlling weight over the opinions of plaintiff's treating physicians. (T. 21).

The law gives "special evidentiary weight" to the opinion of a treating physician. Clark v. Commissioner of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Specifically, if the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion has controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If a treating physician's opinion is not given controlling weight, the ALJ must apply the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). When a treating physician's opinion is discounted, Social

Security regulations provide that the SSA must provide explanations, or "good reasons" for that decision.  Id. at 505.

The plaintiff's left arm was examined and treated by Dr. Moy from December 1995 through October 1998.  (T. 144-50).  His arm was examined further in an orthopedic consultative evaluation performed on April 5, 2002 with Dr. Steven Dina, who found plaintiff to have a "marked" impairment involving any sort of act involving his left arm and a "guarded" prognosis.  (T. 116-19). The ALJ accepted the medical opinions of the treating physicians and found that the plaintiff had a severe impairment due to dysfunction of his left arm.  (T. 16).

Dr. Rajendran, plaintiff's treating psychiatrist, saw the plaintiff in February and March 2002 complaining of anxiety, depression, flashbacks of his accident, inability to concentrate, and hearing multiple auditory voices arguing with each other. (T. 153-54).  Plaintiff thereafter admitted himself to the psychiatric unit of a community hospital in June of 2004, complaining of auditory hallucinations, nightmares, suicidal ideation, and constant physical pain.  (T. 129-138).  The plaintiff was also treated at a community mental health center on three occasions in August and September 2004.  (T. 139-143).  On August 19, 2004, Dr. Tanhehco, a staff psychiatrist, diagnosed

the plaintiff with schizophrenia paranoid disorder, by history, major depressive disorder with psychotic features and anxiety disorder. He also recommended that the plaintiff seek counseling for his admitted marijuana use. (T. 17, 159-163).

The ALJ concluded that the plaintiff responded well to medication for his psychological problems, relying on Dr. Rajendran's report in March that the plaintiff's mood was "much better." (T. 17). The ALJ also found no medically determinable impairment with regard to plaintiff's complaints of hip and leg pain. He noted that the only evidence in the plaintiff's medical record of any complaints of hip and leg pain was an isolated complaint made to Dr. Tanhehco, a psychiatrist, although the plaintiff also testified about his pain at his hearing and also reported it on his disability report in April 2003. (T. 16, 95, 139 182-83, 185). The ALJ's finding that plaintiff was not disabled was based on his determination that there was a lack of objective medical evidence of hip and leg pain, evidence of his unassisted ambulation during a consultative evaluation in April 2002, and a finding that plaintiff's subjective complaints were not fully credible. "Absent more, I find there to be no medically determinable impairment in this regard." (T. 16).

In finding the plaintiff to be not disabled, the ALJ also relied on the report of Dr. Gitlow, a consultative psychiatrist and substance abuse expert who did not examine the plaintiff, but instead only reviewed the plaintiff's medical record. (T. 17). Dr. Gitlow opined that the plaintiff's "psychiatric status could not be adequately assessed for the time period at issue given a lack of evidence of psychiatric symptoms and treatment." (T. 21, 164). He also determined that the plaintiff had "fair (defined as limited but satisfactory) ability to use judgment, deal with work stresses, maintain attention/concentration, understand, remember, and carry out detailed and/or complex instructions, and behave in an emotionally stable manner; and good (defined as more than satisfactory) ability in all remaining occupational, performance, and social adjustment areas." Id.

The ALJ decided to "give greater weight to the opinions of Dr. Gitlow," despite the contrary opinions of plaintiff's treating physicians. Id. While both the plaintiff and ALJ recognized the infrequent and sporadic duration and occasions of treatment, that fact alone does not preclude giving controlling weight to the opinions of plaintiff's treating physicians. See 20 C.F.R. § 404.1527(d) ("unless we give a treating source's opinion controlling weight . . . we consider all of the following

factors in deciding the weight we give to any medical opinion.") (emphasis added).

Furthermore, the ALJ did not provide "good reasons" to justify discounting the treating doctors' opinions. The ALJ concluded that because of the brevity of the treating relationship between the plaintiff and Dr. Tanhehco, he was "convinced that Dr. Tanhehco relied heavily on the claimant's subjective reports in forming his conclusions." (T. 20). However, there exists no substantial evidence in the record to support this conclusion. The ALJ's decision to discount the opinion of Dr. Tanhehco is particularly egregious given the ALJ's selective reliance upon Dr. Tanhehco's single statement regarding plaintiff's marijuana use.[1] "I am convinced that the claimant's anxiety symptoms and difficulties with concentration are secondary to his marijuana use." (T. 21). Moreover, Dr. Stuart Gitlow's opinion was not based on an examination of plaintiff but only based on an examination of plaintiff's medical records which ". . . indicate that the [plaintiff] had difficulties

---

[1] In his treatment plan of 8/19/04, Dr. Tanhehco stated "I encouraged him strongly to have counseling with regard to his marijuana use. Ill effects of marijuana use were discussed with him." (T. 141). Dr. Tanhehco did not opine that his anxiety symptoms, etc. were "secondary to marijuana use" as concluded by the ALJ. (T. 21).

-Page 14-

specifically with anxiety and concentration that may be secondary to chronic use of marijuana." (Tr. 164). (Emphasis added.)

The ALJ found that although plaintiff had PTSD and major depressive disorder, he gave plaintiff no credit for any non-exertional limitations. Plaintiff claims that this was error since the ALJ gave the non-examining physician's opinion more weight than the plaintiff's treating physician (Dr. Tanhehco) who found that plaintiff had severe limitations in many areas of functioning. The ALJ rejected any consideration of limitations on plaintiff's ability to work claiming, "I am convinced that the claimant's anxiety symptoms and difficulties with concentration are secondary to his marijuana use." (T. 21). The ALJ erred in discounting the opinions of the plaintiff's treating physicians without adequately explaining his reasons for doing so and by failing to apply the appropriate factors for assigning the proper weight to be given to a treating physician's opinion without adequately explaining his reasons for not doing so. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The record reveals that plaintiff was severely injured and essentially lost the use of his hand, if not his total arm, despite a number of corrective surgeries over a period of time. Nonetheless, plaintiff returned to work for several months but

"could no longer function even with lighter duties." (T. 96.) There is substantial evidence in the record to support a conclusion that the plaintiff's continuing mental problems, added to his limitations and his inability to work. The ALJ's finding that "I am convinced that the claimant's anxiety symptoms and difficulties with concentration are secondary to his marijuana abuse" is not supported by the record. (Tr. 21). The medical record reveals that plaintiff was hospitalized for a suicide attempt, had numerous GAF findings which would place him in a fully disabled range, and medical reports from Dr. Tanhehco, his treating psychiatrist, which showed that plaintiff had severe limitations in many areas of functioning. Dr. Tanhehco found marked limitations in plaintiff's ability to maintain social functioning, and extreme limitations in concentrations, persistence or pace, marked limitation in the ability to perform simple tasks on a sustained basis and to satisfy an employer's quality production and attendance standards, and severe limitations in the ability to perform complex tasks on a sustained basis or to respond to customary work pressures. (Tr. 159-162). I find that the ALJ's medical determination that plaintiff's mental health impairments were caused by marijuana abuse is not supported by substantial evidence in the record.

**B. The ALJ's failure to consider plaintiff's non-exertional limitations in determining his residual functional capacity to do work in the national economy was error.**

Pursuant to the five-step process promulgated in 20 C.F.R. §§ 404.1520, 416.920, at step five of the process, the Commissioner has the burden of proving that the claimant has the residual functional capacity to engage in substantial gainful work that exists in the national economy based on his age, education, and past relevant work experience. See 42 U.S.C. § 423(d)(2)(A); see also Berry, 675 F.2d at 466-67 (2d Cir. 1982) (finding that if claimant meets his burden of proof, "the burden shifts to the Secretary to prove the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform."). The ALJ found that jobs exist in the regional and national economies which plaintiff can perform by relying upon a vocational expert's (VE) answers in response to the ALJ's hypothetical questions. The questions presented to the VE by the ALJ, however, did not include or incorporate any mental restrictions, even though the ALJ concluded that the plaintiff does have severe impairments due to PTSD, major depressive disorder with psychotic features, and marijuana induced anxiety disorder. (T. 209). When the

plaintiff's attorney asked the VE to take account of plaintiff's impairments such as pain with sitting or standing, limitations in concentration, and panic attacks, the VE responded that no jobs would exist. (T. 210-11). The ALJ claims that he took no consideration of these restrictions or the VE's subsequent answer in determining step five of the required sequential evaluation of disability because he did not "afford full credibility to the claimant." (T. 22). By not considering how plaintiff's mental impairments might affect the ability of a person with the plaintiff's limitations to work, the Commissioner did not meet the burden of proving that substantial gainful work exists in the national economy for an individual with plaintiff's limitations.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the ALJ's decision to deny plaintiff's claim for Social Security disability benefits was not supported by substantial evidence in the record. The ALJ's decision is reversed and remanded to the Commissioner for calculation and payment of benefits. The Commissioner's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
June 15, 2009